[No. D017247. Fourth Dist., Div. One. Nov. 9, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ANATOLE REHMEYER, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.

**COUNSEL**

Laura P. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Robert M. Foster, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**TODD, J.**—After a court trial, James Anatole Rehmeyer was convicted of the following felonies: two counts of residential burglary (Pen. Code,[2] §§ 459/460); one count of unlawful entry for indecent exposure (§ 314, subd. 1, hereafter referred to as felony indecent exposure); and one count of attempted felony indecent exposure (§§ 664/314, subd. 1). The trial court also found true an allegation that Rehmeyer was on bail during proceedings in a prior felony when he committed the attempted indecent exposure. Rehmeyer received a prison sentence totaling seven years and eight months. He appeals, contending (1) the evidence was insufficient to support the convictions, (2) it was improper to charge him with burglary where the underlying offense is felony indecent exposure, (3) the trial court abused its discretion in denying his motion to sever, and (4) the trial court committed various sentencing errors.

### FACTS

On September 22, 1991, at approximately 3:40 a.m., Brenda C. was awakened by a noise in her backyard. She went downstairs and looked through the kitchen window at her backyard but did not observe anything abnormal and returned to bed. After lying in bed awake for about 10 minutes, Brenda heard an upstairs window opening; she was not concerned because she thought her daughter had opened her window because it was hot. Three or four minutes later, Brenda saw a man standing in the doorway of her bedroom. She could see the man from the waist up; a dresser blocked her view of the lower half of the man's body. Brenda did not see any clothing on the man. She described him as having long dark brown hair, a mustache and a very muscular upper torso. She also said he was between five feet, ten inches and six feet tall and had a distinctive body structure because he was very long waisted. Brenda C. did not see the man's genitals.

Brenda yelled, "Who are you? What are you doing? Get out of . . . my house." The man, who had not made any lewd or sexual comments, backed out of the room. Brenda telephoned 911, and the police responded to the house at 4:15 a.m.

At trial, Brenda identified Rehmeyer as the man in her bedroom on the basis of his body structure and coloring, though she said she could not be 100 percent certain because she had not seen his eyes.

Also on September 22, 1991, at 4:17 a.m., 16-year-old Christina S., who lived one house away from Brenda, was awakened by her bed shaking. She

---

[2] All statutory references are to the Penal Code unless otherwise specified.

saw a nude man with an erect penis shaking the head rails to her bed two to three inches from her head. Christina asked the man who he was; the man made no reply. He then turned around and walked out of her bedroom. Christina got out of bed and locked her bedroom door. She looked out the window and saw some police cars. She opened the window, climbed out onto the roof, jumped onto the front lawn and ran to one of the police officers in front of Brenda's house. Fingerprints lifted from the railing of the headboard of Christina's bed matched those of Rehmeyer.

Brenda and Christina were later taken to a curbside line-up at the apartment complex behind Brenda's house. Rehmeyer lived in the apartment complex. Christina identified Rehmeyer, who was wearing only bright orange sweat pants, as the man who had been in her bedroom; Brenda said she was 80 percent sure Rehmeyer was the one.

On February 13, 1992, Constance B. was awakened at 11:35 p.m. by the sound of someone putting lotion on his skin and rubbing briskly. Constance saw a man in her doorway who turned and ran away. The man was nude except for an orange baseball cap. Constance did not see the man's face nor did she see any portion of the man's genitals. Neither of them said anything. After lying still for 15 minutes, Constance left her bedroom and found her tube of K-Y lubricating jelly on the floor in the hallway. The tube had been on Constance's dresser near her bedroom door when she went to sleep. Constance said she knew it had been used because there was a "big squeeze" mark in the middle of the tube after she found it on the hallway floor. Initially, Constance told police she did not believe she could identify the man because she did not see his face. However, the next day she told a police detective that she believed the man in her bedroom was Rehmeyer, who lived in the same apartment complex, wore the same color baseball cap and had similar hair. She also said that Rehmeyer's height and build matched that of the man in her bedroom. Constance said she was 95 percent certain it was Rehmeyer.

On February 13, 1992, Rehmeyer was on bail from the charges stemming from September 21, 1991.

### DISCUSSION

### I

Rehmeyer attacks all of his convictions on the basis that they are not supported by sufficient evidence that he had the intent to commit indecent exposure. The contention is without merit.

■ In reviewing the sufficiency of the evidence, we must draw all inferences in support of the verdict that can reasonably be deduced and must uphold the judgment if, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it. (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

We consider the sufficiency of the evidence to support Rehmeyer's convictions seriatim.

■ Rehmeyer contends the burglary conviction with respect to the residence of Brenda C. cannot stand because there was insufficient evidence that he had the requisite underlying specific intent to commit felony indecent exposure. Rehmeyer relies principally on the fact that Brenda did not see his genitals, arguing this shows he did not intend to expose himself. He also argues that a finding he had the requisite intent is based on speculation and conjecture. Rehmeyer is wrong. First, contrary to Rehmeyer's argument, there is no evidence that he hid his genitals behind the bedroom dresser. Rather, the evidence was that the dresser blocked Brenda's view of Rehmeyer's genitals. Moreover, Brenda was awake when Rehmeyer appeared in her doorway and she started yelling before he could enter the room. From our reading of the evidence, the fact Rehmeyer's genitals were not actually exposed is properly attributed to Brenda having been awake—not to Rehmeyer hiding behind the dresser. Second, we reject the notion that it is pure speculation and/or conjecture to conclude Rehmeyer had the requisite intent to expose himself when he entered Brenda's residence. "Although the People must show that a defendant charged with burglary entered the premises with felonious intent, such intent must usually be inferred from all of the facts and circumstances disclosed by the evidence, rarely being directly provable." (*People* v. *Matson* (1974) 13 Cal.3d 35, 41 [117 Cal.Rptr. 664, 528 P.2d 752], criticized on another point in *Williams* v. *Superior Court* (1984) 36 Cal.3d 441, 447-448 [204 Cal.Rptr. 700, 683 P.2d 699].) In *Matson*, our Supreme Court said the inference the defendant entered a woman's apartment with felonious intent was supported by evidence the defendant used the same modus operandi to rape another woman 11 days earlier. (13 Cal.3d at p. 41.) Here, the trier of fact reasonably could infer that Rehmeyer, when he entered Brenda's residence nude, intended to expose himself by the evidence that he actually did so one house away within a half-hour. The Christina S.

incident, coupled with the Constance B. incident, demonstrated Rehmeyer's modus operandi was to break into the homes of women in his neighborhood at night while nude. From the evidence presented at trial it was reasonable to infer that it also was Rehmeyer's practice as the women slept to masturbate until his penis was erect and then awaken the women so he could expose himself. "When the evidence justifies a reasonable inference of felonious intent, the verdict will not be disturbed on appeal." (*Ibid.*) Substantial evidence supports the trial court's finding that Rehmeyer had the requisite specific intent to indecently expose himself when he broke into Brenda's residence.

■ Rehmeyer also contends the evidence was insufficient to support his convictions of burglary and felony indecent exposure with respect to the Christina S. incident because he did not commit the acts in a lewd manner.[3] Rehmeyer relies on *In re Smith* (1972) 7 Cal.3d 362 [102 Cal.Rptr. 335, 497 P.2d 807], in which our Supreme Court reversed a section 314 conviction based on nude sunbathing on an isolated beach. The high court found the nude sunbather had not lewdly exposed himself within the meaning of section 314. (7 Cal.3d at p. 366.) ■ "[A] conviction of that offense requires proof beyond a reasonable doubt that the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification or affront." (*Ibid.*, fn. omitted.) ■ Clearly, *Smith* is distinguishable; a nude male with an erect penis who shakes a female's bed to awaken her is a far cry from a nude sunbather on an isolated beach. A very strong inference to be drawn is that the reason Rehmeyer—who was nude, with an erect penis and standing inches away from Christina—awoke Christina was "for purposes of sexual arousal, gratification or affront." (*Ibid.*) Contrary to Rehmeyer's suggestion, this is much more than a case of mere nudity. The fact that Rehmeyer did not touch his penis in front of a conscious or awake Christina is not a determinative factor. (See *People* v. *Meeker* (1989) 208 Cal.App.3d 358, 362 [256 Cal.Rptr. 79].) There was more than ample substantial evidence Rehmeyer acted in the required lewd manner to sustain his conviction of section 314, subdivision 1. As to the burglary conviction in connection with this incident, we similarly conclude there was ample evidence that Rehmeyer had the requisite specific intent to expose himself in a lewd manner when he broke into Christina's residence.

■ Finally, Rehmeyer attacks the attempted indecent exposure conviction with respect to the Constance B. incident on insufficient evidence grounds regarding intent and the commission of an overt act. Again, Rehmeyer argues the fact that Constance did not see his genitals shows he did not

[3] Section 314 provides in relevant part: "Every person who willfully and lewdly, either: [¶] 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . ."

have the requisite intent. Again, we reject this argument. Except for his baseball cap, Rehmeyer was nude. Why was he in Constance's apartment in that state if not to expose his genitals? Given the evidence of the Brenda C. and Christina S. incidents, it is reasonable to infer he left because Constance woke up before he had achieved an erection, not because he lacked the specific intent to expose himself. As to an overt act, there was sufficient evidence Rehmeyer helped himself to Constance's lubricating jelly and was in the process of masturbating when she woke up. In sum, there was sufficient evidence to sustain the attempted felony indecent exposure conviction as well as all the other convictions. On review of the judgment, we must presume in support of the judgment the existence of any facts the trier of fact might reasonably infer from the evidence. (*People* v. *Vann* (1974) 12 Cal.3d 220, 225 [115 Cal.Rptr. 352, 524 P.2d 824].) Having done so, we conclude the evidence is sufficient to support the convictions on each of the counts.

II

Rehmeyer contends that felony indecent exposure[4] cannot be the underlying felony for a burglary charge. He is wrong. As relevant to this case, first degree burglary, of course, is the unlawful entry of an inhabited residence with the intent to commit any felony. (§§ 459/460.) Rehmeyer argues that since indecent exposure is a felony only if it takes place in an inhabited dwelling house or structure (see fn. 3, *ante*), the crime does not obtain felony status until after the act of exposure has taken place inside an inhabited dwelling structure. Therefore, Rehmeyer reasons, he could not have had the requisite felonious intent for burglary when he entered the residences of Brenda C. and Christina S., and his burglary convictions for those incidents cannot stand as a matter of law. This argument is not well taken. Rehmeyer entered these residences nude and, as discussed above, it is reasonable to infer that he did so with the intent to expose himself. It cannot reasonably be argued that Rehmeyer did not know that these structures were inhabited residences. Therefore, we conclude his intent at the point of entry was to expose himself while inside a residence—in other words, he entered the residences with the intent to commit a felony. Whether Rehmeyer knew the intricacies of section 314 that made the act of exposure inside an inhabited dwelling structure a felony rather than a misdemeanor is irrelevant to an analysis of whether he had the requisite felonious specific intent for burglary.

---

[4]Section 314 confers felony status to the act of exposing one's private parts if such act is committed inside a residence. The statute reads in pertinent part: "Every person who violates subdivision 1 of this section after having entered, without consent, an inhabited dwelling house, or trailer coach as defined in Section 635 of the Vehicle Code, or the inhabited portion of any other building, is punishable by imprisonment in the state prison, or in the county jail not exceeding one year."

■ We also conclude that section 314, subdivision 1, does not preclude a conviction for burglary here on a theory that a more specific statute controls over a general statute. As stated in *People* v. *Jenkins* (1980) 28 Cal.3d 494, 505 [170 Cal.Rptr. 1, 620 P.2d 587], and *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593], the general rule is that when a specific or special statute covers much of the same ground as a more general statute so that a violation of the specific statute will necessarily result in a violation of the more general statute, prosecution under the general statute is precluded. In other words, the rule applies "only when each element of the 'general' statute corresponds to an element on the face of the 'special' statute or when it appears from the context a violation of the 'special' statute will necessarily or commonly result in a violation of the· 'general' statute . . . ." (*People* v. *Glenos* (1992) 7 Cal.App.4th 1201, 1209 [10 Cal.Rptr.2d 363].) Rehmeyer contends section 314, subdivision 1, is the specific statute and, as such, should control over section 459, the general statute. However, felony indecent exposure and burglary do not fit into these categories. An element of burglary is entry with a specific felonious intent. Felony indecent exposure only requires an unlawful entry; a contemporaneous felonious intent is not necessary. Accordingly, every felony indecent exposure is not necessarily a burglary. Moreover, the specific versus general rule is "designed to ascertain and carry out legislative intent." (*Jenkins, supra,* 28 Cal.3d at p. 505, fn. omitted.) **(8)** In 1982, the Legislature amended section 314 to provide for alternate felony status for indecent exposures that took place inside inhabited dwelling structures. (Stats. 1982, ch. 1113, § 2, p. 4032.) In our view, the Legislature decided to treat residential indecent exposure more seriously than such acts that do not occur inside a victim's residence in recognition of the sanctity of one's residence and the inherent danger presented by residential intruders. (See *People* v. *Thomas* (1991) 235 Cal.App.3d 899, 906 [1 Cal.Rptr.2d 434]; *People* v. *Carrasco* (1988) 202 Cal.App.3d 1078, 1082 [249 Cal.Rptr. 154].) Rehmeyer concedes the Legislature "clearly intended to enact tougher laws against residential intruders." It also appears to us the Legislature intended the People to have an alternate charging provision in those instances where burglary could not be proven. ■ We do not believe the Legislature in elevating residential indecent exposure to alternate felony status intended to preclude burglary prosecutions in this kind of case.

■ Rehmeyer also is incorrect in arguing that burglary here is a lesser included offense of unlawful entry for indecent exposure. An offense is necessarily included within a charged offense "if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as

specified the lesser offense is necessarily committed." (*People* v. *Geiger* (1984) 35 Cal.3d 510, 517, fn. 4 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055].) As discussed above, burglary requires an unauthorized entry with specific felonious intent; the corresponding element of felony indecent exposure is an unauthorized entry. Felony indecent exposure can be committed without committing burglary. For example, consider someone who without prior authorization enters a residential room in a hotel and once inside sees an individual and *then* forms the intent to expose himself or herself. Upon completion of the act, the person is guilty of felony indecent exposure. But if the same individual, again without prior authorization, enters the room with the intent of finding someone as the target for his or her indecent exposure, the individual is guilty of residential burglary.

▮ Nor do we find merit in Rehmeyer's argument that his burglary conviction in connection with the Brenda C. incident must be reduced to an attempted felony indecent exposure conviction—the charge he stands convicted of in connection with the Constance B. incident—because the acts he committed in the Brenda C. incident were comparable or even less offensive than those in the Constance B. incident. This argument invades upon the prosecutor's charging discretion. (See *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 451 [279 Cal.Rptr. 834, 807 P.2d 1063] [the prosecution has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek]; *People* v. *Anderson* (1991) 233 Cal.App.3d 1646, 1657 [285 Cal.Rptr. 523] [prosecution function to decide the charges in light of the evidence the prosecution is confident it can adduce at trial].) The original unconsolidated information filed in the Constance B. case charged Rehmeyer with residential burglary and attempted felony indecent exposure. Upon Rehmeyer's motion to dismiss, the residential burglary charge was dismissed. Subsequently, the remaining felony indecent exposure count was consolidated with the Brenda C./Christina S. information. We discern no impropriety here in the charging procedure or in the result. Evidence was presented that Rehmeyer entered the residence of Brenda C. with the specific intent to lewdly expose himself. This was sufficient to sustain a conviction of burglary. Whether the act of exposure was actually accomplished is irrelevant to the burglary count; burglary is completed when entry is made with the requisite intent. (*People* v. *Lamica* (1969) 274 Cal.App.2d 640, 644 [79 Cal.Rptr. 491].)

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote 1, *ante*, page 1758.

## DISPOSITION

Affirmed.

Wiener, Acting P. J., and Work, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 3, 1994. Kennard, J., was of the opinion that the petition should be granted.