Filed 5/1/15  P. v. Jimenez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>EUSEBIO JIMENEZ,<br><br>　　　　Defendant and Appellant. | A140258<br><br>(San Francisco County<br>Super. Ct. No. 219181) |

Late one night, appellant Eusebio Jimenez entered his sleeping neighbor's bedroom through an open window, lay on top of her with his pants pulled down, and licked her ear. When she awakened and told him to leave, he stood up in front of her with his penis exposed before returning to his apartment. A jury convicted appellant of residential burglary and felony indecent exposure after entry into an inhabited dwelling house without consent. (Pen. Code, §§ 314, subd. 1, 459, 460, subd. (a).)[1]

Appellant argues the judgment must be reversed because (1) the trial court erroneously ruled the defense was not entitled to elicit testimony about a statement he made at the time of the incident leading to the charges, thus depriving him of his federal due process right to confront and cross-examine witnesses; (2) the court should have instructed the jury on trespass as a lesser included offense of the charged burglary; and (3) the evidence was insufficient to support his conviction of indecent exposure. We affirm.

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

1

# I. FACTS AND PROCEDURAL HISTORY

B.H. lived in a second-story flat of a two-unit building with her friend and roommate Damon B. Appellant lived in the downstairs in-law unit of the building. B.H. had "minimal, just sort of like in passing, neighborly contact" with appellant and had spoken to him only a few times.

After arriving home from work on October 1, 2012, B.H. tried to open the curtain over the window in her bedroom, but the entire rod and curtain fell onto the ground. She was too short to replace the rod and curtain, so she left them on the floor under the window, being careful not to step on them.

B.H. went out to dinner and met Damon and another friend at a local bar, returning home after 11:00 p.m. She did a load of laundry and heard music and voices coming from the downstairs apartment. When she went to bed around midnight, she turned on her television set, which cast a light into the room, and opened her bedroom window all the way because it was a hot night. The window screen was still on the window at that point. The door at the bottom of the stairs to the flat was locked with a deadbolt and the door leading from the laundry room to the back stairs was locked as well.

B.H. fell asleep quickly but awakened to the sensation of pressure on her back and someone licking her ear. She initially thought it might be her boyfriend, but he didn't have a key and when she awoke more fully she realized another person was in her room. She sat up in bed and covered herself with the blankets on the bed because she was not wearing any clothes. B.H. immediately recognized the person as appellant, her downstairs neighbor.

Appellant moved to sit on the side of B.H.'s bed while she scooted up toward the headboard to get away from him. She was "petrified" and told him to get out. She used a calm voice because she was afraid he would become angry and aggressive if she screamed, or would possibly hurt Damon if he had come home. Appellant sat on the bed and they had a "short verbal exchange" during which B.H. repeatedly told him to leave. Appellant stood up, and B.H. saw he was not wearing any underwear and his pants were down around his knees with his penis exposed. He faced B.H. and did not make any

2

effort to shield himself or hurry up. It appeared to B.H. that appellant had a partial erection, consistent with his having been recently fully aroused.

Appellant walked out the bedroom door, and B.H. heard chimes and creaking signaling that he had walked down the front stairs and had left the flat. She put on a bathrobe, fastened the chain locks on the door at the top of the stairs so appellant could not return, checked Damon's bedroom, and, after seeing Damon was not there, called him on his cell phone. B.H. told Damon their downstairs neighbor had been in her room licking her ear and trying to have sex with her. Her demeanor on the phone was "frantic."

Damon was walking home and was just a couple of houses away when he received B.H.'s call. He went into their flat and found her hysterical and shaking. While still outside, and just before B.H.'s call, Damon had seen appellant walk quickly out of the gate to their building and into the backyard of a neighbor.

Damon called the police and officers arrived a few minutes later. They determined B.H.'s bedroom window to be the point of entry due to the following factors: (1) the window screen had been removed and was found in the yard below, placed between the building and the drainpipe that ran up from the yard to the bedroom; (2) items on a dresser in front of the bedroom window had been moved or knocked over; (3) there were handprints on the side of the window that had not been there before; (4) a shoe print was discovered on the curtain B.H. had left on the floor under her window earlier that evening; (5) the drainpipe was broken a few inches under the bedroom window; and (6) overturned buckets were found in the yard that could have been used to boost someone up to the drainpipe to crawl up and gain access to the window.

Police officers went downstairs to appellant's door, but despite loud knocking and announcements of their presence, no one answered. One of the officers called the landlord, who provided a key that police used to enter appellant's apartment. Once inside, police found appellant in bed with a blanket covering him, but he did not appear to have been sleeping and he was wearing clothing that matched the description B.H. had

given the police. B.H. identified appellant as her attacker, and a swab of DNA taken from her ear was later determined to match a DNA sample taken from appellant.

Appellant was initially charged with assault with sexual intent during a burglary and first degree residential burglary. (§§ 220, subd. (b), 459, 460, subd. (a).) The jury was unable to reach a unanimous verdict and a mistrial was declared. A third amended information was filed charging appellant with first degree residential burglary, assault with sexual intent during a burglary, and felony indecent exposure after entry into an inhabited dwelling house without consent. (§§ 220, subd. (b), 314, subd. 1, 459, 460.) The burglary count included an allegation that the crime was a violent felony because a person other than an accomplice was present in the residence. (§ 667.5, subd. (c)(21).)

The trial court granted a defense motion to set aside the information with respect to the assault charged under section 220, subdivision (b).[2] (§ 995.) The case proceeded to a jury trial on the two remaining counts, at which the prosecution presented the evidence outlined above. The defense called witnesses who testified appellant had been drinking beer and tequila during a gathering at his apartment on the night of the incident. Adam Blum, who managed the window washing company where appellant worked, testified that in his opinion appellant was honest and trustworthy, but also acknowledged that appellant had a lot of experience with heights and with removing screens from windows. Appellant's ex-wife testified he had never been sexually violent with her.

The defense position at trial was that appellant's conduct amounted to a "drunk and pathetic pass" meant to "seduce" B.H., and he never intended a sexual assault. As to

---

[2] Section 220, subdivision (b) provides, "Any person who, in the commission of a burglary of the first degree, as defined in subdivision (a) of Section 460, assaults another with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 shall be punished by imprisonment in the state prison for life with the possibility of parole." The third amended information alleged appellant had assaulted B.H. with the intent to commit rape, sodomy, oral copulation or sexual penetration. The court concluded the evidence presented at the preliminary hearing was insufficient to show appellant "intended to do anything that was not consensual with the exception of a sexual battery. And sexual battery is not one of the four enumerated crimes in this [count]."

4

the burglary count, the jury was instructed, "If the entry was made with the intent to commit acts which are not crimes or with the intent to seduce the victim no burglary was committed."

The jury convicted appellant of both counts and found the violent felony allegation on the burglary count to be true. The court sentenced appellant to prison, imposing the six-year upper term on the burglary count and a consecutive term of eight months (one-third the middle term) on the indecent exposure count.

## II. DISCUSSION

A. Exclusion of Statements in the Bedroom

At the preliminary hearing, B.H. testified that she asked what appellant was doing while they were sitting on her bed and he said, "You know, I'm your neighbor. I like you. Don't you like me?" Appellant argues the trial court incorrectly excluded this statement at trial, because it tended to impeach certain aspects of B.H.'s trial testimony. We reject the claim.

1. Pretrial Exclusion of Statement as Hearsay/Irrelevant

The admissibility of appellant's "I like you" statement to B.H. was initially litigated in response to a defense motion in limine, in which appellant argued the statement, to the extent it was hearsay (i.e., an assertion offered to prove the truth of the matter stated under Evidence Code section 1200, subdivision (a)), was admissible under the state of mind exception to the hearsay rule under Evidence Code section 1250, subdivision (a), and the spontaneous statement exception under Evidence Code section 1240. Appellant also argued the portion of the statement phrased as a question ("Don't you like me?") was not hearsay because it was not offered for the truth of the matter stated. (Evid. Code, § 1200, subd. (a).) The prosecution objected to the introduction of the statement by the defense, though reserving the right to introduce it as a party admission under Evidence Code section 1220 during the prosecution's case-in-chief.

The court ruled appellant's statement to B.H. was inadmissible as a spontaneous statement under Evidence Code section 1240 because it was B.H., not appellant, who was

responding to startling circumstances.  (See, e.g., *People v. Lucas* (2014) 60 Cal.4th 153, 269.)  It further concluded the statement was a self-serving explanation of appellant's presence in B.H.'s room, and was therefore not trustworthy as required for the state of mind exception to the hearsay rule under Evidence Code sections 1250 and 1252.  (See, e.g., *People v. Smith* (2003) 30 Cal.4th 581, 629.)  Finally, to the extent the question "Don't you like me?" was not hearsay, the court determined it was not relevant.

2.  Trial Evidence

During the prosecution's direct examination of B.H., the following exchange occurred:

"Q:  Has [appellant] ever expressed any interest in you, either sexually or socially?

A:  No.

Q:  Did you ever do anything before that night to indicate that you were either sexually or socially interested in him?

A:  No.

Q:  Did he ever indicate to you in any way that he was ever interested in you sexually or socially?

A:  No.

Q:  You never flirted with him?

A:  No.

Q:  Now, we all know, even though there may not be anything overtly said, overtly done, sometimes between people there can be a twinkle of an eye, there can be a wink, there can be something unsaid that would lead you to believe that there was a spark there. Was there ever any sort of spark between you and the defendant?

A:  No."

Later, the prosecution asked, "Do you believe—did you perceive that [appellant] was there [in your bedroom] in order to seduce you?"  B.H. responded, "No."  Defense counsel requested a sidebar, and the court held a chambers conference to discuss this line

6

of questioning and its effect on the admissibility of appellant's "I like you" statement to B.H.

Defense counsel argued the "I like you" statement was admissible for impeachment purposes at that juncture because it was inconsistent with B.H.'s testimony that appellant had never expressed any sexual or social interest in her. The court concluded the statement was not inconsistent with B.H.'s testimony in this respect because, in context, she had obviously been describing appellant's lack of sexual or social interest on any occasion *prior* to the offense, and was not referring to his conduct or statements during the incident itself. Defense counsel also argued the "I like you" statement tended to impeach B.H.'s testimony that she did not believe appellant came to her bedroom to seduce her. The trial court agreed, and indicated it would order B.H.'s testimony on that point stricken. It advised the jury: "The question was asked, 'Now, [B.H.], let me ask you this. Do you believe—did you perceive that the defendant was there in order to try to seduce you?' [¶] The answer is, 'No.' [¶] The question and answer is stricken and the jury is directed to disregard the question and answer."[3]

### 3. Analysis

Appellant does not challenge the court's initial ruling excluding the "I like you" statement as inadmissible hearsay and irrelevant nonhearsay, but argues the prosecutor opened the door to cross-examination regarding the statement by asking B.H. whether there had been any sexual interest between her and appellant.[4] He reasons the prosecutor's questioning of B.H. "permitted the jury to infer that appellant had no intent to seduce [her] or to express any romantic feelings towards her. Given the unambiguous nature of appellant's statements ("I like you"), this was clearly a disputed fact the jury

---

[3] We presume the jury followed the court's admonition and did not consider the testimony in reaching its verdict. (See *People v. Osband* (1996) 13 Cal.4th 622, 714.)

[4] For the first time at oral argument, appellant's counsel suggested the trial court erred in excluding the statement on hearsay and relevancy grounds, but she offered no analysis of Evidence Code sections 1240, 1250 and 1252. Issues not supported by sufficient argument and authority, raised for the first time at oral argument, will not be considered. (*People v. Dixon* (2007) 153 Cal.App.4th 985, 996.)

should have been permitted to determine for themselves." Appellant reiterates his claim, first raised in the trial court, that the exclusion of the statement violated his federal constitutional right to present a defense and to confront and cross-examine witnesses. (U.S. Const., 6th Amend.)

A prior inconsistent statement by a witness is admissible for impeachment purposes under state law notwithstanding the hearsay rule so long as the witness has an opportunity to explain or deny the statement or is subject to being recalled as a witness. (Evid. Code, §§ 770, 1235.) We review a court's ruling on the admissibility of such a statement for abuse of discretion. (*People v. Jones* (2013) 57 Cal.4th 899, 954 (*Jones*); *People v. Homick* (2012) 55 Cal.4th 816, 859.)

Here, the trial court did not abuse its discretion in excluding the "I like you" statement as impeachment evidence. The statement did not tend to contradict B.H.'s testimony that appellant had not expressed a sexual or social interest in her prior to the incident leading to the charges against him. And, because the court struck B.H.'s testimony that she did not believe appellant was there to seduce her, there was nothing in that regard to impeach. As noted, appellant does not argue the statement was admissible in the absence of a legitimate impeachment purpose. " 'A defendant in a criminal case may not introduce hearsay evidence for the purpose of testifying while avoiding cross-examination.' " (*People v. Edwards* (1991) 54 Cal.3d 787, 820 [defendant's notebook prepared after the charged homicide and his statements to police properly were excluded under Evid. Code, § 1252 as untrustworthy].)

We similarly reject appellant's claim that the court's exclusion of the "I like you" statement for impeachment purposes violated his federal constitutional rights. "[T]he routine application of provisions of the state Evidence Code law does not implicate a criminal defendant's constitutional rights." (*Jones*, *supra*, 57 Cal.4th at p. 957.) "[A]s long as the excluded evidence would not have produced a ' " 'significantly different impression' " ' of the witness's credibility, the confrontation clause and related constitutional guarantees do not limit the trial court's discretion in this regard." (*People v. Contreras* (2013) 58 Cal.4th 123, 152.)

8

Appellant suggests B.H.'s "truthfulness was seriously compromised" because she "misled the jury . . . by testifying that appellant never gave any indication that he liked her." He notes that while the court struck B.H.'s testimony that she did not believe appellant was there to seduce her, she had previously testified that she believed appellant was going to rape her, and the "I like you" statement contradicted that aspect of her testimony as well.[5] We do not agree with this characterization of B.H.'s testimony or the effect of appellant's "I like you" statement on her credibility as a witness.

B.H. testified appellant had not previously expressed a sexual or social interest in her and she believed he had come to her bedroom that night to rape her. Nothing in the record suggests B.H. was untruthful about the nature of her previous encounters with appellant or her perception of appellant's reason for entering her bedroom. Appellant had a strong incentive to lie about his presence in B.H.'s bedroom and to profess a lack of any criminal intent. For the same reason the trial court determined the "I like you" statement to be untrustworthy under Evidence Code sections 1250 and 1252, we conclude it would not reasonably have produced a significantly different impression of B.H.'s credibility.

B. <u>Trespass as Lesser Included Offense of Burglary</u>

The trial court denied defense counsel's request for a jury instruction on misdemeanor trespass as a lesser included offense of the residential burglary count. Appellant argues this was error, because trespass was an included offense in light of the manner in which the burglary was charged. We disagree.

Even in the absence of a request, the trial court has a duty to instruct on an uncharged lesser offense included within a greater charged offense when substantial evidence would support a jury determination the defendant was guilty only of the lesser crime. (*People v. Parson* (2008) 44 Cal.4th 332, 348-349.) "An uncharged offense is included in a greater charged offense if *either* (1) the greater offense, as defined by

---

[5] The trial court overruled a defense objection to this testimony as speculative and unduly prejudicial under Evidence Code section 352, a ruling appellant does not challenge on appeal.

statute, cannot be committed without also committing the lesser (the elements test), *or* (2) the language of the accusatory pleading encompasses all of the elements of the lesser offense (the accusatory pleading test)." (*Ibid.*) Under the accusatory pleading test, the question is "whether the accusatory pleading describes the greater offense in language such that the offender, if guilty, must necessarily have also committed the lesser crime." (*People v. Moon* (2005) 37 Cal.4th 1, 25-26.)

Residential burglary is the entry of a dwelling house with the intent to commit theft or a felony. (§§ 459, 460, subd. (a).) Criminal trespass, also known as "unauthorized entry," is the entry of a residence without the owner's consent. (§ 602.5, subd. (a).) It is well settled that trespass is not a lesser included offense of burglary under the elements test, because burglary may be committed by a person who has permission to enter the building. (*People v. Foster* (2010) 50 Cal.4th 1301, 1343-1344; *People v. Birks* (1998) 19 Cal.4th 108, 118, fn. 8 (*Birks*).) Appellant recognizes as much, but argues the accusatory pleadings test was satisfied in this case.[6]

Appellant reasons as follows: The third amended information alleged appellant had committed the crime of first degree burglary by entering the victim's home "with the intent to commit one or more of the following felonies: rape, sodomy, oral copulation, sexual penetration, sexual battery, and indecent exposure." Appellant was charged in a separate count with felony indecent exposure under section 314, which provides in relevant part: "Every person who willfully and lewdly . . . [¶] 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . [¶] is guilty of a misdemeanor. [¶] Every person who violates subdivision 1 of this section after having entered, without consent, an inhabited dwelling house . . . is punishable by imprisonment in the state prison, or in

---

[6] Although trespass is a lesser *related* offense of burglary, a defendant is entitled to an instruction on a lesser related offense only upon the mutual assent of the parties. (*People v. Taylor* (2010) 48 Cal.4th 574, 622; *Birks*, *supra*, 19 Cal.4th at pp. 112-113.) The prosecution did not consent to the trespass instruction and appellant makes no claim of error in this regard.

the county jail not exceeding one year." Appellant reasons that because felony indecent exposure as charged required proof appellant "entered, without consent . . . an inhabited dwelling," the burglary count listing indecent exposure as one of several intended felony offenses also necessarily required an entry without consent.

The problem with appellant's argument is its focus on the elements of the separate count of felony indecent exposure rather than the elements of the burglary as charged. Burglary requires a specific intent to commit a theft or felony at the time of entry, but it does not require the completion of any such offense. (*People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18 ["gist" of burglary is *entry* with the proscribed intent; entry constitutes burglary regardless of whether any felony or theft is actually committed].) In this case, it was alleged appellant entered a home intending to commit one or more felony sexual offenses, and though felony indecent exposure was one of those offenses, a residential burglary could be committed as charged without committing or even intending that particular crime, and without proof that the home was entered "without consent." The inclusion of felony indecent exposure among the intended felonies that might support the burglary charge did not render trespass a lesser included offense of the charged residential burglary under the accusatory pleading test. (Cf. *People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, 1768-1769 (*Rehmeyer*) [burglary is not a lesser included offense of felony indecent exposure].)

C.  Sufficiency of Evidence—Indecent Exposure

Appellant argues his conviction for felony indecent exposure under section 314, subdivision 1 must be reversed because the evidence was insufficient to show that his exposure of his penis in B.H.'s bedroom was "lewd." We are not persuaded.

"In reviewing the sufficiency of the evidence, we must draw all inferences in support of the verdict that can reasonably be deduced and must uphold the judgment if, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond reasonable doubt. [Citation.] Before a judgment of conviction can be set aside for insufficiency of the

11

evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it. [Citation.]" (*Rehmeyer*, *supra*, 19 Cal.App.4th at p. 1765.) An appellate court reviewing a criminal conviction cannot reverse merely because the evidence could be reasonably reconciled with the defendant's innocence of the offense at issue. (*People v. Tully* (2012) 54 Cal.4th 952, 1006-1007.)

Under section 314, subdivision 1, and as relevant here, it is a crime for someone to "willfully and lewdly" expose his private parts in a place where others are present to be offended or annoyed. The requirement that the exposure be "lewd" relates to the defendant's intent and is an essential element of the offense. (*In re Smith* (1972) 7 Cal.3d 362, 365 (*Smith*).) As explained by the Supreme Court: "[A] person does not expose his private parts 'lewdly' within the meaning of section 314 unless his conduct is sexually motivated. Accordingly, a conviction of [section 314] requires proof beyond a reasonable doubt that the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront." (*Id*. at p. 366.)

Seizing on this language, appellant argues the evidence did not show he harbored the requisite lewd intent because he did nothing to explicitly direct B.H.'s attention to his genitals. He notes, "She testified that he did not point or gesture towards his penis; that he did not masturbate; and that he never commented on the fact that his penis was exposed." Nothing in section 314 or *Smith* requires that a defendant gesture toward his private parts, masturbate or make any particular comment about his body as an element of the offense. The critical question was whether the prosecution presented substantial evidence appellant acted with a lewd intent.

Viewed in the light most favorable to the prosecution, the record discloses substantial evidence appellant intended to expose himself and draw B.H.'s attention to his genitals for a sexual purpose. He climbed into her bedroom in the middle of the night while she was sleeping, pulled down his pants, climbed on top of her, and licked her ear. When she awakened, he remained on the bed with his pants still down, even as she told

12

him to leave. When appellant stood up to leave, he faced B.H. directly so she could see his semierect penis and made no attempt to cover himself or hurry. It was reasonable to infer from the overall circumstances of the encounter that appellant's exposure of his penis in B.H.'s bedroom was undertaken "for purposes of sexual arousal, gratification or affront." (See *Rehmeyer*, *supra*, 19 Cal.App.4th at p. 1766 ["A nude male with an erect penis who shakes a female's bed to awaken her" had the requisite intent for a conviction under § 314, subd. 1].)

That B.H. did not notice appellant's penis was exposed while they were sitting on the bed does not mean the evidence was insufficient to support a conviction of indecent exposure. "[S]ection 314, subdivision 1 requires evidence that a defendant actually exposed his or her genitals in the presence of another person, but there is no concomitant requirement that such person actually must have seen the defendant's genitals." (*People v. Carbajal* (2003) 114 Cal.App.4th 978, 986.) And, even if we focus solely on appellant's intent when he stood and faced B.H. with his penis exposed, we can readily infer sexual motivation from his failure to quickly turn away and pull up his pants.

### III. DISPOSITION

The judgment is affirmed.

NEEDHAM, J.

We concur.

JONES, P.J.

BRUINIERS, J.

13