Filed 12/7/20  In re J.L. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.L., a Person Coming Under the Juvenile Court Law. | H047290 (Monterey County Super. Ct. No. 19JV000114) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>J.L.,<br><br>    Defendant and Appellant. | |

After a contested jurisdictional hearing, the juvenile court sustained three charges against appellant J.L., a minor, for kidnapping to commit robbery, robbery, and assault with a deadly weapon.  The juvenile court declared J.L. a ward of the court, placed him in the custody of his probation officer, and committed him to the county youth center program for a year.  The juvenile court ordered probation supervision with multiple conditions, including an electronics search condition, until J.L.'s 23d birthday.

On appeal, J.L. raises several claims of error.  As to the juvenile court's jurisdictional determination, J.L. challenges the sufficiency of the evidence supporting the court's finding on the aggravated kidnapping charge.  As to the dispositional order,

J.L. claims the juvenile court erred by failing to apply Penal Code section 654, failing to declare whether the assault with a deadly weapon charge was a felony or a misdemeanor, failing to set his maximum custody time, placing him on probation beyond his 21st birthday, and imposing an invalid electronics search condition. In addition, J.L. contends his defense counsel was ineffective for failing to object to the electronics search condition. The Attorney General agrees with J.L. on some of his claims regarding the disposition.

For reasons that we will explain, we reject J.L.'s sufficiency of the evidence claims and affirm the juvenile court's jurisdictional order. We reverse the dispositional order and remand the matter to the juvenile court with directions.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Procedural History*

On January 29, 2019,[1] the Monterey County District Attorney filed a juvenile wardship petition (petition) under Welfare and Institutions Code section 602, subdivision (a), alleging that J.L. committed kidnapping to commit robbery (Pen. Code, § 209, subd. (b)(1)[2]; count 1), attempted murder (§§ 664, 187, subd. (a); count 2), robbery (§ 211; count 3), and assault with a deadly weapon (§ 245, subd. (a)(1); count 4). The petition identified the victim as "John Doe" and alleged the assault with a deadly weapon charge as a felony. The alleged crimes involved J.L. and two juvenile accomplices, J.Q., and A.J.

The juvenile court held a contested jurisdictional hearing on J.L.'s petition in July 2019.[3] On July 31, the court found true the charges of kidnapping to commit robbery

---

[1] Unless otherwise indicated all dates occurred in 2019.

[2] Unspecified statutory references are to the Penal Code.

[3] The July 2019 hearing was the second contested jurisdictional hearing. The first hearing began on April 10. However, before that hearing concluded, the juvenile court granted J.L.'s motion for new counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. The court also granted a motion to sever J.L.'s case from that of his accomplices.

(count 1), robbery (count 3), and assault with a deadly weapon (count 4). The court found not true the attempted murder charge and dismissed it. In addition, the court found J.L. to be described by Welfare and Institutions Code section 602. The juvenile court did not on the record mention at the jurisdictional hearing whether it had considered designating count 4 as a felony or a misdemeanor.

At a dispositional hearing on August 14, the juvenile court declared J.L. a ward of the court, placed him "in the custody of [his] probation officer for [] 566 days," with 201 days of credit for time served and 365 days to be served in the Monterey County Probation Department Youth Center Program, and ordered wardship and probation supervision with conditions until the day J.L. turns 23 years old. The court orally "confirm[ed]" at the dispositional hearing that it had previously "sustained a finding as true as to . . . Count 4, a felony." Further, in the written dispositional order, a box is checked next to a preprinted finding regarding the sustained charges that states, "The court previously sustained the following counts. Any charges which may be considered a misdemeanor or a felony [f]or which [the] court has not previously specified the level of offense are now determined to be as follows." Below that statement, there is a list including the three sustained counts which indicates that they are felonies, mirroring the charges in the petition. The juvenile court, however, did not on the record mention at the dispositional hearing a specific determination of the offense status for count 4.

B. *Evidence Presented at the July 2019 Jurisdictional Hearing*

1. Prosecution Evidence

At 7:50 p.m. on January 26, John Doe walked out of his apartment in Salinas and was attacked by J.L. and two other teens. J.L. and one of his accomplices initiated the attack by grabbing Doe near the apartment complex's parking lot while the third

---

Subsequently, J.L. moved the court for a mistrial and a new jurisdictional hearing. The court granted the motion. Thus, the April 2019 jurisdictional hearing did not result in any findings on the charges against J.L.

accomplice acted as a lookout. When Doe asked his attackers why they were attacking him, they told him to "shut up" and "be quiet." J.L. and his accomplices then moved Doe from the parking lot area down a path to a dark area that "wasn't very illuminated by the apartment." According to a Salinas Police Department officer, the distance between where Doe was first accosted to where he was moved measured over 50 feet. Doe was afraid. He neither knew the attackers nor resisted them.

When they got to the dark area, J.L. and his accomplices hit Doe. After beating and throwing Doe to the ground, the attackers took Doe's wallet, cellphone, and car keys from his pocket. A "girl came out" and the attackers kicked Doe. One of the attackers (not J.L.) stabbed Doe on the right side of his rib cage while he was on the ground. Afraid he was going to be killed, Doe tried to grab the knife as the attacker attempted to stab him again. The knife cut Doe's hand.

M.R. lived in the apartment complex and observed about eight to 10 seconds of the attack from 15 feet away, through her bedroom window.[4] M.R. heard noises outside her window, looked out, and saw three teens and a man on the ground. According to M.R., there were "[s]ort of" some lights on in the area of the attack; it was not completely dark. The teens punched and kicked the man, whom M.R. recognized as a neighbor. M.R. also recognized from school the three teen attackers, J.L., J.Q., and A.J. J.L. kicked and punched Doe during the attack, and J.Q. stabbed Doe with a pocketknife. M.R. told the attackers to stop and leave Doe alone. The attackers stopped hitting Doe and ran away. Later, the police took M.R. to view some individuals. M.R. identified J.L. as one of the attackers. He had on the same clothes that he had been wearing during the attack.

On the night of the crime, a police officer with the Salinas Police Department responded to a call about a possible robbery and stabbing involving multiple juvenile suspects. Within about five minutes of the dispatch, the officer observed a possible

_____

[4] M.R. was a minor at the time of the jurisdictional hearing. We refer to her by her initials to protect her privacy interests. (See Cal. Rules of Court, rule 8.90(b)(10).)

suspect matching a description provided by the dispatcher. The officer stopped the suspect (identified in court as J.Q.) and saw two fresh-looking small cuts on the suspect's hand and dried blood on his sweatshirt. The officer searched J.Q. and found a wallet with a bank card bearing Doe's name and a cellphone. Thereafter, the officer saw three individuals jump over a nearby fence. Other officers gave chase and apprehended two of the individuals.

When another police officer spoke to Doe immediately after the crime, Doe was bleeding, scared, and somewhat in shock. Doe told the officer that he had been robbed at knifepoint and his car keys, wallet, and cellphone had been taken. Doe said the three assailants were teenaged Hispanic males and described their clothing. The officer also spoke to M.R., who provided A.J.'s name to the officer.[5] Police went to A.J.'s nearby residence and observed multiple people inside and some jumping over fences around the residence. J.L. was apprehended in the area. He possessed a pocketknife with what appeared to be blood on its blade and Doe's car keys.

### 2. Defense Evidence

J.L. was the sole defense witness. J.L. testified that on the day of the crime he went to a barbeque at a friend's house. J.Q. and A.J. were there. J.L. saw some people step away from the barbeque for about 10 to 15 minutes, but he did not do so. When the police arrived at the house, J.L. and others ran away. J.L. ran because he was scared. As J.L. fled, he saw a person who had been at the barbeque drop something. J.L. picked it up because he "thought it was [his] friend's." On cross-examination, J.L. confirmed that he was not on probation at the time of the incident and had his parents' permission to attend the barbeque. J.L. jumped over three fences as he ran from the barbeque, and A.J. was one of the people who fled with him.

---

[5] The parties stipulated that M.R. did not give J.L.'s name to the officer.

## II. DISCUSSION

J.L. contends: (1) the evidence was insufficient to support the juvenile court's finding on count 1 for aggravated kidnapping; (2) the juvenile court erred by failing to apply section 654 to stay the sentence on count 3 for robbery; (3) the juvenile court erred by failing to expressly declare whether count 4 was a felony or a misdemeanor; (4) the juvenile court erred by failing to set his maximum custody time; (5) the juvenile court exceeded its authority when it placed him on probation until his 23d birthday; (6) the juvenile court imposed an invalid electronics search condition; and (7) defense counsel was ineffective for failing to object to the electronics search condition on the ground raised in this appeal.

We will first address J.L.'s challenge to the sufficiency of the evidence and then turn to his claims that oppose the juvenile court's dispositional order. Finally, we will discuss an error in the July 31, 2019 jurisdictional order.

A. *Sufficiency of the Evidence for Count 1*

J.L. asserts the evidence was insufficient to support the asportation and intent-to-rob elements of the aggravated kidnapping charge in count 1. Specifically, he contends the movement of Doe during the crime was merely incidental to the robbery and did not span a substantial distance or substantially increase the risk to Doe. J.L. also maintains there was no evidence establishing that when he and his accomplices first encountered Doe, they had the intent to rob him.

1. <u>Legal Principles</u>

" 'The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials.' " (*In re Cesar V.* (2011) 192 Cal.App.4th 989, 994.) "Any offense alleged in the [Welfare and Institutions Code] section 602 petition must be proven true 'beyond a reasonable doubt' and be 'supported by evidence, legally admissible in the trial of criminal cases.' " (*People v. Trujeque* (2015) 61 Cal.4th 227, 247; Welf. & Inst. Code, § 701.) Thus, in a juvenile appeal, courts apply the same

6

appellate standard of review used when an adult defendant challenges the sufficiency of the evidence to support a conviction. (*Cesar V.*, at pp. 994–995.)

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Powell* (2018) 5 Cal.5th 921, 944; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319.) A reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "[A]n appellate court may not substitute its judgment for that of the [trier of fact]. If the circumstances reasonably justify the [trier]'s findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.) Before an appellate court may set aside a finding of guilt for insufficiency of the evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it." (*People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, 1765.)

Section 209, subdivision (b)—commonly called aggravated kidnapping—"sets two requirements: [¶] 1. The defendant must move the victim in a way that is not 'merely incidental' to the robbery, *and* [¶] 2. This movement must increase the victim's 'risk of harm' beyond that necessarily present in the robbery."[6] (*People v. Taylor* (2020) 43 Cal.App.5th 1102, 1105.) " 'In determining "whether the movement is merely

---

[6] Specifically, section 209, subdivision (b), provides in relevant part: "(1) Any person who kidnaps or carries away any individual to commit robbery . . . shall be punished by imprisonment in the state prison for life with the possibility of parole. [¶] (2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense."

7

incidental to the [underlying] crime . . . the [trier of fact] considers the 'scope and nature' of the movement. [Citation.] This includes the actual distance a victim is moved." ' " (*People v. Williams* (2017) 7 Cal.App.5th 644, 667.) However, "[n]o minimum distance is required if the movement is substantial." (*Taylor*, at p. 1106.) Moreover, the second requirement " ' "includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased." ' " (*Williams*, at p. 667.) The two requirements are interrelated; "whether the victim's forced movement was merely incidental to the [underlying offense] is necessarily connected to whether it substantially increased the risk to the victim." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*).) "[E]ach case must be considered in the context of the totality of its circumstances." (*Ibid*.)

Further, kidnapping to commit robbery "requires the additional element of an intent to rob, an intent which must be formed before the kidnap[p]ing commences." (*People v. Bailey* (1974) 38 Cal.App.3d 693, 699; see also *People v. Lewis* (2008) 43 Cal.4th 415, 518–519, disapproved on another ground in *People v. Black* (2014) 58 Cal.4th 912, 919; *People v. Davis* (2005) 36 Cal.4th 510, 565–566.)

2. Analysis

Applying the foregoing principles to the facts of this case, we reject J.L.'s challenge to the juvenile court's finding that he committed aggravated kidnapping. J.L. and his accomplice first grabbed Doe near the apartment complex's parking lot and then moved him over 50 feet down a path to a spot near a building. The extent of the movement is substantial. (See *People v. Jones* (1999) 75 Cal.App.4th 616, 629 [40 feet is "by no means an insubstantial distance"]; see also *People v. Corcoran* (2006) 143 Cal.App.4th 272, 280 [in context, movement of approximately 10 feet "was not merely brief and trivial"].) Moreover, the movement was not incidental to the robbery because

8

the taking of Doe's possessions surely could have been accomplished where the attackers first grabbed Doe. (See *People v. James* (2007) 148 Cal.App.4th 446, 455 & fn. 6 ["Lack of necessity is a sufficient basis to conclude a movement is not merely incidental;" "a movement unnecessary to a robbery is not incidental to it at all"].)

Further, when the attackers initially accosted Doe near the parking lot, they told Doe to keep quiet and one of them acted as a lookout. After the attackers moved Doe, they beat and robbed him in a dark area that "wasn't very illuminated." Although the second location was adjacent to an occupied building and not completely dark, the movement took Doe from a spot near an open parking lot to an area that was poorly lit and more confined, limiting Doe's possible avenues of escape. Moreover, that the lookout joined in the attack at the second location suggests he was less concerned about his cohorts being happened upon there. The trier of fact could reasonably have inferred from the evidence that the parking lot area was likely to be more heavily trafficked than the dark area beside the building. Under the totality of the circumstances, the movement here changed Doe's environment significantly; it was not "brief and trivial." (See *Dominguez*, *supra*, 39 Cal.4th at p. 1153.) When viewed in the light most favorable to the judgment, the record contains substantial evidence upon which the juvenile court could reasonably have found that the movement of Doe was more than merely incidental to the robbery and increased the risk of harm to Doe beyond that necessarily present in the robbery. (See *People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1049.)

In addition, we are not persuaded that the evidence is insufficient for the juvenile court to have concluded that J.L. had an intent to rob Doe at the time he and his accomplices first accosted Doe. The evidence establishes that when they reached the second location, J.L. and his accomplices hit Doe, threw him to the ground, and took his things. They then kicked and stabbed Doe. Shortly after the incident, J.L. was apprehended possessing Doe's car keys. J.Q., similarly, was caught with Doe's wallet.

9

"Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420; see also *People v. Holt* (1997) 15 Cal.4th 619, 669.) Here, J.L. and his accomplices took Doe's possessions immediately after they led him to the dark area and knocked him to the ground. Based on these actions, we conclude the juvenile court could have reasonably inferred that J.L.'s intent, from the outset, was to take Doe's property against his will by force or fear.[7] (See *People v. Curry* (2007) 158 Cal.App.4th 766, 779–780.)

For these reasons, we reject J.L.'s challenge to the sufficiency of the evidence supporting the juvenile court's finding on count 1.

B. *Claims Related to Dispositional Order*

We turn next to J.L.'s claims related to the disposition of the petition. The Attorney General agrees with J.L. on some of these claims of error and recommends that we remand this matter to the juvenile court so that it may address them. For the below stated reasons, we agree that this case must be remanded.

1. <u>Maximum Custody Time and Section 654</u>

J.L. contends the juvenile court mistakenly failed to specify in its disposition the maximum term of confinement for the sustained charges. The Attorney General agrees that the juvenile court erred in this regard. We concur with the parties on this claim.

J.L. argues further that the juvenile court erred by failing to apply section 654 to stay the punishment for robbery in count 3, because the robbery and aggravated kidnapping crimes were committed with a single intent and objective. The Attorney

---

[7] We note that J.L. cites a probation department detention report filed with the juvenile court several months prior to the July 2019 jurisdictional hearing as support for his claim that the evidence was insufficient to prove an initial intent to rob. We do not consider the detention report in reaching our conclusion because the report was not entered into evidence at the jurisdictional hearing. Our conclusion is based solely on the admitted evidence. (See *People v. Miller* (1990) 50 Cal.3d 954, 992 [sufficiency determination is to be made on "the properly admitted evidence"].)

10

General asserts that section 654 does not apply here because J.L. was placed on probation. We do not address J.L.'s claim regarding section 654 because we deem it premature.

When a minor is removed from the custody of his or her parent or guardian as a result of a wardship order pursuant to Welfare and Institutions Code section 602, "the juvenile court is required to indicate the maximum period of physical confinement." (*In re Julian R.* (2009) 47 Cal.4th 487, 491; Welf. & Inst. Code, § 726, subd. (d);[8] see also Cal. Rules of Court, rule 5.795(b).) Further, "Welfare and Institutions Code section 730 has been broadly interpreted to authorize a juvenile court to order a juvenile confined to juvenile hall for a period of time as a condition of probation." (*In re Ronny P.* (2004) 117 Cal.App.4th 1204, 1207.) When a minor is ordered confined as a condition of probation, the plain language of Welfare and Institutions Code section 726, subdivision (d)(1), requires the juvenile court to set forth the maximum term of confinement. By contrast, a maximum period of physical confinement may not be set when a juvenile is placed on home probation because he or she remains in his or her parents' custody. (*In re A.C.* (2014) 224 Cal.App.4th 590, 591–592.)

Here, the juvenile court adjudged J.L. a ward of the court and placed him in the custody of his probation officer for 566 days, with credit for time served in juvenile hall

---

[8] Welfare and Institutions Code section 726, subdivision (d)(1), provides in relevant part: "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." " 'Physical confinement' means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Department of Corrections and Rehabilitation, Division of Juvenile Justice." (Welf. & Inst. Code, § 726, subd. (d)(5).) Welfare and Institutions Code section 730 authorizes the commitment of a minor who has been adjudged a ward of the court to a juvenile home, ranch, camp, forestry camp, or juvenile hall.

and 365 days to be served in the county youth center program. By doing so, the court removed J.L. from the custody of his parents. Thus, Welfare and Institutions Code section 726, subdivision (d)(1), applied, and the court should have set a maximum term of confinement but did not do so. Accordingly, we will remand the matter to the juvenile court to set a maximum term of confinement.

Because the juvenile court did not specify J.L.'s maximum term of confinement, J.L.'s claim regarding the applicability of section 654 is premature. Even if we assume section 654 applies, there currently is no term of confinement for count 3 that could be stayed. The parties may raise their arguments regarding the application of section 654 on remand, at which time the juvenile court may consider them in the first instance.

### 2. Declaration Regarding Wobbler Offense (Count 4)

J.L. contends the juvenile court improperly failed to exercise its discretion and expressly declare whether the assault with a deadly weapon offense charged in count 4 is a felony or a misdemeanor. The Attorney General agrees with J.L. We concur and will direct the juvenile court to address this issue on remand.

"Assault with a deadly weapon is a wobbler that can be treated in the court's discretion as a felony or a misdemeanor." (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 90 (*Raymundo M.*).) Welfare and Institutions Code section 702 states in relevant part: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." The California Supreme Court has explained that, under this provision, the juvenile court is required to make an "explicit declaration" whether a wobbler offense is a felony or a misdemeanor. (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1204, 1207 (*Manzy W.*); see also Cal. Rules of Court, rules 5.780(e)(5), 5.795(a).) "This declaration must be made at or before disposition." (*In re G.C.* (2020) 8 Cal.5th 1119, 1125 (*G.C.*).)

12

The purpose of the statutory requirement is "twofold:" "it helps determine the length of any present or future confinement for a wobbler offense" and " it 'ensur[es] that the juvenile court is aware of, and actually exercises, its discretion under . . . [Welfare and Institutions Code] section 702.' " (*G.C.*, *supra*, 8 Cal.5th at p. 1125.) "It is not sufficient that the offenses were identified as felonies in the wardship petitions and in the minute order of the jurisdictional hearing, or that they were treated as felonies for purposes of calculating the maximum term of confinement." (*Ibid*.) "If the court did not make the required express determination, but the record shows it was aware of—and, in fact, exercised—its discretion, the matter need not be remanded. [Citation.] However, if the record does not show such an exercise of discretion, the matter must be remanded." (*Raymundo M.*, *supra*, 52 Cal.App.5th at p. 92.)

J.L. and the Attorney General agree that the juvenile court did not acknowledge its discretion to declare the assault with a deadly weapon offense a misdemeanor or make an express declaration as to the status of the offense. Neither the juvenile court nor the parties mentioned at either the jurisdictional hearing or the dispositional hearing that the offense was a wobbler which needed to be designated.[9]

We agree with the parties that the record here does not demonstrate the juvenile court was aware of and exercised its discretion to declare whether the assault with a deadly weapon offense would be treated as a felony or a misdemeanor. None of the juvenile court's statements during the jurisdictional and dispositional hearings indicate that it considered the status of the offense, and the juvenile court did not expressly declare its determination in this regard. Given the lack of indication that the juvenile court was aware of and, in fact, exercised its discretion, the preprinted statement in the

---

[9] We note that neither party on appeal has addressed whether J.L.'s failure to object to the juvenile court's lack of action on the wobbler renders J.L.'s claim of error forfeited. (See *G.C.*, *supra*, 8 Cal.5th at pp. 1129–1133.) Because the Attorney General does not assert forfeiture and we conclude remand is necessary for other reasons, we decline to apply principles of forfeiture here.

13

written order of the dispositional hearing which mentions the determination of the level of the offense does not satisfy the requirement of Welfare and Institutions Code section 702. (See *In re Ricky H.* (1981) 30 Cal.3d 176, 191; *Manzy W.*, *supra*, 14 Cal.4th at pp. 1207–1209.)

Accordingly, we will direct the juvenile court on remand to exercise its discretion and declare whether the assault with a deadly weapon offense is a felony or a misdemeanor.

### 3. Wardship and Probation Termination Date

J.L. contends the juvenile court did not have the authority under pertinent statutes to set his probation termination date at his 23d birthday. The Attorney General concedes that J.L.'s claim of error is correct and states that the termination date "must be reset" to J.L.'s "21st birthday[,] at the very latest." We agree.

" 'A "juvenile court" is a superior court exercising limited jurisdiction arising under juvenile law.' [Citation.] [Welfare and Institutions Code] [s]ection 602 provides that any person who is between the ages of 12 and 17 when he or she violates any law of this state 'is within the jurisdiction of the juvenile court, which may adjudge [him or her] to be a ward of the court.' . . . Once the juvenile court has 'initial' jurisdiction, it may retain jurisdiction over a ward until he or she turns 21 years old ([Welf. & Inst. Code,] § 607, subd. (a)), or, until 25 years old, if the ward 'was committed [by the juvenile court] to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities' for a crime 'listed in subdivision (b) of [Welfare and Institutions Code] [s]ection 707.' "[10] (*People v. Ramirez* (2019) 35 Cal.App.5th 55, 66; see also *In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1320.)

---

[10] Specifically, Welfare and Institutions Code section 607 states in relevant part: "(a) The court may retain jurisdiction over a person who is found to be a ward or dependent child of the juvenile court until the ward or dependent child attains 21 years of age, except as provided in subdivisions (b), (c), and (d). [¶] (b) The court may retain

14

Here, although J.L.'s offenses for robbery and kidnapping to commit robbery are listed in Welfare and Institutions Code section 707, subdivisions (b)(3) and (10), the juvenile court did not commit J.L. to the Division of Juvenile Facilities or confine him in a state hospital or mental health facility. (See Welf. & Inst. Code, § 607, subds. (b), (c), (d).) Instead, the juvenile court placed J.L. in the custody of his probation officer and committed him to the county youth center program. Thus, under Welfare and Institutions Code section 607, subdivision (a), the termination date of J.L.'s wardship and probation should have been set at the latest at his 21st birthday, not his 23d birthday. We will direct the juvenile court on remand to reset J.L.'s wardship and probation termination date to on or before J.L.'s 21st birthday.

### 4. Electronics Search Condition

J.L. contends the juvenile court imposed an invalid electronics search condition under *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*) and *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*). Relatedly, J.L. claims that his defense counsel was ineffective for failing to object to the electronics search condition on the ground raised in this appeal.

The Attorney General counters that J.L. forfeited his appellate challenge to the electronics search condition and fails to establish that his defense counsel was ineffective

---

jurisdiction over a person who is found to be a person described in Section 602 by reason of the commission of an offense listed in subdivision (b) of Section 707, until that person attains 25 years of age if the person was committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities. [¶] (c) The court shall not discharge a person from its jurisdiction who has been committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities while the person remains under the jurisdiction of the Department of Corrections and Rehabilitation, Division of Juvenile Facilities, including periods of extended control ordered pursuant to Section 1800. [¶] (d) The court may retain jurisdiction over a person described in Section 602 by reason of the commission of an offense listed in subdivision (b) of Section 707, who has been confined in a state hospital or other appropriate public or private mental health facility pursuant to Section 702.3 until that person attains 25 years of age, unless the court that committed the person finds, after notice and hearing, that the person's sanity has been restored." (See also Welf. & Inst. Code, § 607, subd. (g).)

15

for not objecting to that condition. Alternatively, the Attorney General suggests that if we strike the electronics search condition, we should do so without prejudice to the People presenting additional evidence on remand to satisfy the standard articulated by the California Supreme Court in *Ricardo P.*

a. Additional Background

The probation officer's report to the juvenile court recommended the imposition of 34 conditions of probation. An electronics search condition was included in the proposed conditions, stating: "Submit all electronic devices under your control to a search by the probation officer or a peace officer, of any text messages, voicemail messages, call logs, photographs, e-mail accounts, internet sites and social media accounts, with or without reasonable or probable cause or the benefit of a search warrant, at any time of the day or night and provide the probation or peace officer with any passwords necessary to access the information specified, and you will not change or add any email addresses or passwords without prior permission of your Probation Officer. The minor shall not knowingly clean or delete his/her Internet browsing history without prior permission from your Probation Officer."

At the dispositional hearing, J.L.'s defense counsel did not object to any of the proposed probation conditions. Further, counsel stated that she had reviewed the probation conditions with J.L., and J.L. told the juvenile court he was willing to abide by and agreed to the terms and conditions of probation. The juvenile court imposed all the conditions recommended by the probation department.

The record contains no evidence that J.L. had access to any electronic devices or used such devices to communicate with his accomplices to facilitate the charged crimes or for any other reason. The probation report does not provide any particularized support for the electronics search condition, and the juvenile court did not offer an explanation as to why the condition is necessary or how it is reasonable under *Lent*. Moreover, the

16

dispositional hearing occurred on August 14, 2019, one day before the California Supreme Court decided *Ricardo P.*, *supra*, 7 Cal.5th 1113.

　　　　b.　Legal Principles

By statute, probation conditions must be "reasonable."　(§ 1203.1, subd. (j); Welf. & Inst. Code, § 730, subd. (b).)　" 'A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.' "　(*Ricardo P.*, *supra*, 7 Cal.5th at p. 1118.)　A reviewing court may not strike a probation condition as unreasonable unless it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' "　(*Ibid.*, quoting *Lent*, *supra*, 15 Cal.3d at p. 486.)　This three-part test—commonly referred to as the *Lent* test—applies to juvenile and adult probation cases.　(*Ricardo P.*, at pp. 1118–1119.)

In *Ricardo P.*, the California Supreme Court reviewed an electronics search condition imposed on a juvenile probationer who had admitted to participating in two felony burglaries where there was no evidence of the use of electronic devices.　(*Ricardo P.*, *supra*, 7 Cal.5th at p. 1115.)　The court focused its analysis on the third prong of the *Lent* test—whether the condition was reasonably related to future criminality.　(*Id.* at p. 1119.)　The court explained that the third *Lent* prong "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition."　(*Id.* at p. 1122.)　The court rejected the argument that any search condition that facilitated supervision of probationers is necessarily reasonable. It observed this justification could support sweeping conditions—such as directing probationers to wear 24-hour body cameras—that would not be reasonable because "the burden on the probationer would be disproportionate to the legitimate interest in effective supervision."　(*Id.* at p. 1125.)

Our supreme court concluded that the electronics search condition imposed on Ricardo P. lacked the requisite proportionality because it was "far more burdensome and intrusive" than probation conditions the court had previously found reasonable. (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1124, 1126.) The court reasoned that the "sweeping" (*id* at p. 1122) electronics search condition imposed on Ricardo P. significantly burdens his "privacy interests" (*id.* at p. 1123) and thus "requires a correspondingly substantial and particularized justification." (*Id.* at p. 1126.) The court explained that "a juvenile court imposing such a condition must consider whether, in light of 'the facts and circumstances in each case' [citation], the burdens imposed by the condition are proportional to achieving some legitimate end of probation." (*Id.* at p. 1127.)

A failure to object to a probation condition as unreasonable forfeits the right to challenge the condition on that ground on appeal. (*People v. Welch* (1993) 5 Cal.4th 228, 237; *In re Sheena K.* (2007) 40 Cal.4th 875, 881–882; *People v. Moran* (2016) 1 Cal.5th 398, 404, fn. 7.) As an appellate court, we typically review a juvenile court's decision to impose conditions of probation for abuse of discretion. (*People v. Olguin* (2008) 45 Cal.4th 375, 379; *Ricardo P.*, *supra*, 7 Cal.5th at p. 1118.)

       c. Analysis

Although the failure to object to a probation condition as unreasonable forfeits the issue, here, given the lack of information or factual development in the record as to the electronics search condition and because *Ricardo P.* was decided a day after the dispositional hearing in this case, we exercise our discretion to consider the merits of J.L.'s challenge to the condition under *Ricardo P.* and *Lent*.[11] (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6; *People v. Catlin* (2001) 26 Cal.4th 81, 131, fn. 11; *In re Victor L.* (2010) 182 Cal.App.4th 902, 928.)

---

[11] Because we address the merits of J.L.'s claim of error, we need not consider his related claim of ineffective assistance of counsel for failure to object to the challenged condition.

There is no dispute in this case that the electronics search condition satisfies the first two prongs of the *Lent* test. The condition has no relationship to the sustained crimes. The condition also governs conduct that is not in itself inherently illegal. (*In re Alonzo M.* (2019) 40 Cal.App.5th 156, 164 (*Alonzo M.*).) Thus, as in *Ricardo P.*, the issue turns on the third prong of the *Lent* test: whether the condition " ' "requires or forbids conduct which is not reasonably related to future criminality." ' " (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1119.)

J.L. contends that neither the prosecutor nor the juvenile court asserted any relationship between the condition and his future criminality, and the record contains no information showing that J.L. used electronic devices in connection with any past unlawful behavior. The Attorney General, in response to J.L.'s ineffective assistance claim, asserts that defense counsel may have forgone an objection to the electronics search condition because it was reasonably imposed to ensure that J.L. would not contact his accomplices or the victim—behavior that was prohibited by other probation conditions.

On this record, we cannot agree that the generally enhanced supervision which may result from the sweeping electronics search condition is sufficiently substantial and particularized when considered against the burdens imposed by the condition on J.L. (See *People v. Cota* (2020) 45 Cal.App.5th 786, 791 (*Cota*); *Ricardo P.*, *supra*, 7 Cal.5th at pp. 1122–1123, 1128–1129; see also *Alonzo M.*, *supra*, 40 Cal.App.5th at pp. 166–168.) We therefore strike the electronics search condition imposed here as unreasonable and thus invalid under *Lent*.

Nevertheless, we are mindful that the juvenile court did not have the benefit of the guidance provided by the California Supreme Court in *Ricardo P.* and did not engage in the factfinding necessary to fashion an appropriate electronics search condition for J.L. Under these circumstances, we conclude that the People should be given the opportunity to present additional evidence to the juvenile court on remand, if they so choose, to

19

support the imposition of a valid electronics search condition.  (See *Ricardo P.*, *supra*, 7 Cal.5th at pp. 1128–1129; see also *Alonzo M.*, *supra*, 40 Cal.App.5th at p. 168; *Cota*, *supra*, 45 Cal.App.5th at p. 791; *In re David C.* (2020) 47 Cal.App.5th 657, 665, fn. 4.) Accordingly, we will direct that, on remand, the juvenile court may consider whether to impose a new electronics search condition.

C.  *Correction to Jurisdictional Hearing Minute Order*

Although neither party has stated so in his briefing, there is an inconsistency between the juvenile court's finding on count 4 as pronounced at the jurisdictional hearing and the finding on count 4 specified in the corresponding minute order, dated July 31, 2019.  Specifically, the juvenile court found true the charge alleged in count 4 of the petition, namely assault with a deadly weapon under section 245, subdivision (a)(1). However, the minute order for the jurisdictional hearing states:  "Based on the evidence presented, the Court finds the charge of *Penal Code Section 261(a)(1) as to Count 4* a Felony in the [Welfare and Institutions Code section] 602 petition 19JV000114 is True." (Italics added.)  No count in the petition alleged that J.L. had violated section 261—a statute that defines rape.

"Courts may correct clerical errors at any time" to make the their " 'records reflect the true facts.' "  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  Accordingly, we will direct the juvenile court to correct its jurisdictional hearing minute order to state the charged crime that it actually found true for count 4.

### III.  DISPOSITION

The jurisdictional order, dated July 31, 2019, is affirmed.  The dispositional order, dated August 14, 2019, is reversed, and the matter is remanded for limited purposes.  On remand, the juvenile court shall:  (1) exercise its discretion under Welfare and Institutions Code section 702 and expressly declare on the record whether the minor's offense of assault with a deadly weapon (count 4) is a felony or a misdemeanor; (2) set the minor's maximum term of confinement; (3) set the minor's wardship and probation termination

20

date to on or before the minor's 21st birthday; (4) consider whether to impose an electronics search condition consistent with Welfare and Institutions Code section 730, subdivision (b), and the principles articulated in *In re Ricardo P.* (2019) 7 Cal.5th 1113; and (5) correct the minute order for July 31, 2019, to indicate that the juvenile court found true the crime of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), as charged in count 4 of the juvenile wardship petition.

_____

                       Danner, J.

WE CONCUR:

_____

Greenwood, P.J.

_____

Grover, J.

**H047290**
***People v. J.L.***